## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AAG GLASS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:21-cv-00638-SRF |
| | ) | |
| LAMINADOS DE ALLER, S.A., | ) | |
| VETROTOOL S.A., ROBERTO PUGA | ) | |
| GARCIA, and MANUEL PUGA DIAZ, | ) | |
| | ) | |
| Defendants. | ) | |

Scott D. Cousins, LEWIS BRISBOIS BISGAARD & SMITH LLP, Wilmington DE; Aaron M Bernay, FROST BROWN TODD LLP, Cincinnati OH.

Attorneys for Plaintiff

## <u>MEMORANDUM OPINION</u>

July 8, 2026

Wilmington, Delaware

**FALLON, U.S. MAGISTRATE JUDGE[1]:**

Pending before the court is the Motion of the Plaintiff for a Judgment by Default pursuant to Federal Rule of Civil Procedure 55(b)(2), against Defendants Laminados De Aller, S.A.,[2] VetroTool S.A., Roberto Puga Diaz and Manuel Puga Garcia, collectively "Defendants." (D.I. 141)  For the reasons which follow, Plaintiff's motion is **GRANTED**.[3]

## I.   JURISDICTION

Federal jurisdiction in this case is based upon diversity of citizenship. 28 U.S.C § 1332(a)(2).  Plaintiff is a Delaware limited liability company with its principal place of business in Batavia, Ohio. (D.I. 1 at ¶ 5)  Defendants, Laminados de Aller, S.A. and VertroTool S.A. are foreign public limited liability companies each with their principal place of business in Asturias, Spain.  (*Id* at ¶¶ 8-9.) Defendants, Roberto Puga Garcia and Manuel Puga Diaz are individuals residing in Oviedo, Spain. (*Id* at ¶¶ 10-11.)  The damages claimed exceed the $75,000 jurisdictional requirement. 28 U.S.C § 1332(b); (*Id.* at ¶ 23.)

---

[1] On May 10, 2022, the parties consented to the jurisdiction of the Magistrate Judge to conduct all proceedings and order the entry of a final judgment in accordance  with 28 U.S.C. § 646(c) and Fed. R. Civ. P. 73. (D.I. 38)

[2]  Defendant is a Spanish sociedad anonima (public limited liability company) (D.I. 141 at ¶ 8)

[3] The associated affidavits and exhibits are found at D.I. 142, D.I. 143, D.I. 144, D.I. 145, D.I. 154, D.I. 155, D.I. 156.

## II. BACKGROUND

### A.    Factual Background

Plaintiff AAG Glass, LLC, ("Plaintiff") filed this breach of contract action on April 30, 2021, against Defendants Laminados de Aller, S.A. ("Laminados"), VetroTool, S.A. ("VetroTool"), Robert Puga Garcia ("Garcia") and Manuel Puga Diaz ("Diaz") (collectively "Defendants"). (D.I. 1)  Plaintiff is a Delaware limited liability company that makes automotive windshield glass at a factory in Ohio. (D.I. 1 at ¶ 1)  Laminados is a Spanish manufacturer of industrial equipment that produces furnaces for making automotive glass.  (*Id.* at ¶ 2)  VetroTool is a corporate affiliate of Laminados who, allegedly, supplied part of the equipment to Laminados.  (*Id.* at ¶ 6) Garcia and Diaz are owners of Laminados and VetroTool, and Garcia was the primary contact between AAG and Laminados during the parties' relationship.  (*Id.*)

On or about August 22, 2018, Plaintiff and Laminados entered into an agreement (the "Agreement") whereby Laminados would sell, ship and install a complete production line for manufacturing automotive windshields. (*Id.* at ¶¶ 13, 16-17, Ex. 1)  The production line was to be ready for shipment by April 5, 2019, and expected to fulfill orders by July 19, 2019.  (*Id.*) The Agreement was guaranteed by Vetrotool, Garcia and Diaz (the "Guaranty").  (*Id.* at ¶ 6; Ex. 2) All three guarantor parties signed the Guaranty on the same date as the Agreement.  (*Id.*)

Defendants failed to meet every material deadline in their Agreement. (*Id.* at ¶ 18)  At the outset, Defendants were to provide a project timeline and heater design layout within 30 days of entering the Agreement, both of which arrived incomplete and late. (*Id.*)  Furthermore, Defendants failed to ship their production in April 2019, and when it arrived in July of that year, the fabrication of each piece of equipment was not complete. (*Id.* at ¶ 19)  Given the significant delays in production and concerns about Defendants' solvency, Plaintiff amended the Agreement

3

twice and advanced funds to Defendants so the Agreement could be completed. (*Id.* at ¶¶ 20-21)[4] Ultimately, Defendants neither delivered a complete production line nor installed it at Plaintiff's factory in Ohio. (*Id.* at ¶ 22) Thus, Plaintiff made significant expenditures to manufacture, produce, ship, program, and install the production line Defendants had promised.[5] (*Id.*) As such, the production line Plaintiff was promised was not able to produce merchantable products until September 15, 2020, causing Plaintiff to lose out on several contract awards. (*Id.* at ¶¶ 18, 23) Plaintiff requests total damages of $3,909,238.61 plus attorneys' fees and costs in the amount of $571,311.34. (D.I. 154 at 4, D.I. 156 at ¶ 9)

## B. Procedural Background

The parties' Agreement contained alternative dispute resolution procedures in which the parties were to submit claims to the American Arbitration Association ("AAA") of Wilmington, Delaware, which Plaintiff initiated. (D.I. 1-1 at § 21; D.I. 1 at ¶15) On November 6, 2020, before filing suit, Plaintiff sent Defendants a demand letter but Defendants did not respond to it. (D.I. 1 ¶15 at D.I. 141 at 6 (quoting Lauch Aff. at ¶ 18)) On December 16, 2020, Plaintiff filed a request for mediation with the AAA. (*Id.*) Although Laminados initially agreed to mediate the dispute and the AAA appointed a mediator, Laminados subsequently refused to participate in the mediation process. Consequently, the dispute remained unresolved. (*Id.*) Therefore, Plaintiff initiated the present action on April 30, 2021. (*Id.*)

---

[4] The first amendment to the Agreement was in August 2019, where Plaintiff modified its payment schedule which effectively advanced funds to Defendants. (D.I. 1 at ¶ 20). Two months later, Plaintiff amended the Agreement again and advanced € 100,000 to Defendants to complete fabrication of the production line which was still a work in progress. (D.I. at ¶ 21)

[5] Plaintiff incurred expenses to take the components Defendants delivered and convert them into a functioning production line, including: $300,000 to air freight unfinished parts from Spain to Ohio, $ 600,000 to program its furnace and pre-processing lines, $ 700,000 to install the furnace's electrical cabinets, and over $60,000 in safety fencing. (D.I. 1 at ¶ 21)

The docket reflects that the Defendants were represented by counsel and participated in the litigation through December 30, 2022, when their original counsel's motion to withdraw was granted. (D.I. 53) Defendants retained new counsel and participated in the litigation, including the pretrial conference. (D.I. 74) A jury trial was set to begin on July 22, 2024, (D.I. 72; D.I. 86), but on July 19, 2024, the court was notified of a potential settlement and the trial date was vacated. (D.I. 103)

On September 30, 2024, Plaintiff and three of the four Defendants agreed to a final settlement agreement, stipulation of dismissal, and form of judgment. (D.I. 111) Plaintiff received executed copies on October 25, 2024, from all Defendants except Diaz. (D.I. 111) In response, Plaintiff moved to enforce the settlement agreement against Diaz. (D.I. 119) On January 29, 2025, Defendants' second set of counsel was granted leave to withdraw. (D.I. 127) On that same date, the court denied Plaintiff's motion for enforcement of the settlement agreement against Diaz. The court ordered the parties to submit a joint status report on or before March 17, 2025, that included whether any Defendants other than Diaz may be terminated from the case and what remained to be litigated in the case regarding Diaz. (D.I. 126) On March 17, 2025, Plaintiff filed a status report informing the court that Defendants did not substantively respond to Plaintiff's outreach efforts. (D.I. 129) Plaintiff further represented that it considered any further settlement efforts unsuccessful and intended to proceed against all Defendants through either default judgment or trial. (*Id.*)

On March 18, 2025, this court entered an oral order noting Defendants did not submit a status report and ordered the parties to submit a proposed amended scheduling order by March 25, 2025. (D.I. 130) Plaintiff submitted its proposed form of order which asked the court to set a deadline for motions for entry of default and default judgment as Defendants remained

unresponsive to Plaintiff's attempts to contact them.  (D.I. 131)  On March 25, 2025, the court entered an oral order directing Plaintiff to submit its proposed scheduling order on March 27, 2025.  (D.I. 132)  On March 27, 2025, the court entered an amended scheduling order, which set deadlines for Plaintiff of April 4, 2025, to file a motion for default and a deadline of May 2, 2025, to file a motion for default judgment.  (D.I. 134)  On April 4, 2025, Plaintiff moved for entry of default against all Defendants.  (D.I. 137)  The Clerk of the Court subsequently entered Defaults in Appearance against all Defendants.  (D.I. 140)

On May 5, 2025, Plaintiff filed a Motion for Default Judgment as to all Defendants.  (D.I. 141)  The court scheduled a damages inquisition hearing on the instant motion for January 8, 2026.  (D.I. 148)  Despite being served with Plaintiff's Motion and notice of the inquisition hearing, Defendants did not appear. (D.I. 141-2)[6]  The hearing was held and Plaintiff's witness, Chief Financial Officer, Frank Lauch, testified in support of Plaintiff's damages caused by Defendants' breach of the Agreement. Plaintiff was granted leave to supplement the record and to submit a proposed form of order for Judgment by Default. (D.I. 153)  Plaintiff supplemented the record on January 29, 2026.  (D.I. 154; D.I. 155; D.I. 156)

## III.    Legal Standard

Entry of default judgment is a two-step process. *Tristrata Tech., Inc. v. Med. Skin Therapy Research, Inc.,* 270 F.R.D. 161, 164 (D. Del. 2010). First, the party seeking a default judgment must request that the Clerk of Court enter default against the party that has failed to answer the pleading or otherwise defend itself in the action. Fed. R. Civ. P. 55(a); *see also J & J Sports Prod., Inc. v. Kim,* No. 14-1170, 2016 1238223, at *1 (D. Del. Mar. 29, 2016). After default has been entered, a plaintiff may obtain a default judgment.  Fed. R. Civ. P. 55(b); *see also J & J*

---

[6] On November 7, 2025, the court sent notice of the inquisition hearing to Garcia and Diaz.

*Sports Prod.*, 2016 1238223, at *1. If the plaintiff is seeking relief in the form of a sum certain, it may obtain a default judgment from the Clerk of Court. Fed. R. Civ. P. 55(b)(1); *see also J & J Sports Prod.*, 2016 1238223, at *1. Otherwise, "the party seeking default judgment must apply to the court for an entry of default judgment." *Tristrata Tech.*, 270 F.R.D. at 164.

Courts have discretion over whether to enter a default judgment in a particular case. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). The court considers three factors when determining if default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa,* 210 F.3d 154, 164 (3d Cir. 2000). For purposes of that determination, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Genedics, LLC v. Meta Co.*, No. 17-1062, 2019 3802650, at *3 (D. Del. Aug. 13, 2019) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

Finally, "[i]n assessing a motion for default judgment, the court should take the necessary steps to establish damages with reasonable certainty." *Bd. of Trs., Plumbers & Pipefitters Loc. Union No. 74 Pension Fund v. Mep Nationwide, LLC*, No. 21-503-MN, 2022 2951690, at *4 (D. Del. July 26, 2022), *report and recommendation adopted*, 2022 3354702 (D. Del. Aug. 12, 2022); *see also Palmer v. Slaughter*, No. 99-899-GMS, 2000 1010261, at *2 (D. Del. July 13, 2000) ("The court ... is required to calculate the appropriate amount of damages. It cannot simply accept the plaintiff's representations on this subject as being true.").

## IV.    DISCUSSION

### A.    Liability

The relevant *Chamberlain* factors weigh in favor of entering default judgment on Plaintiff's claims against the Defendants. *See Chamberlain*, 210 F.3d at 164. First, the facts alleged in the Complaint, together with the attached Agreement and Guaranty, demonstrate that Plaintiff and Laminados entered into a binding contract with performance guaranteed by VetroTool, Garcia, and Diaz. Laminados contracted to fabricate, ship and install a complete production line so Plaintiff could manufacture automotive glass. The Agreement required that the production line would be fully operational and ready to fulfill customer orders no later than July 19, 2019. (D.I. 1 at ¶ 3, 16-17; Ex 1) However, Laminados breached the Agreement by failing to deliver a complete production line and failing to install the equipment. Plaintiff has demonstrated that it will be prejudiced if default judgment is denied because Defendants' breach of the Agreement caused Plaintiff substantial financial losses, and absent a default judgment, Plaintiff would be unable to recover the damages resulting from that breach. (D.I. 141 at 13); *see Roy v. Sakhr Software Co. (K.S.C.C.)*, C.A. No. 11-863-LPS, 2015 WL 4608132, at *2 (D. Del. July 31, 2015) (finding prejudice to the plaintiff when defendants failed to participate in their lawsuit and took no action after the Clerk of the Court entered default). Moreover, courts within the Third Circuit recognize "considerable delays, especially those that might 'stretch on indefinitely' are sufficient to show prejudice to the plaintiff." *Grove v. Rizzi 1857 S.P.A.*, 2013 WL 943283 at *2 (E.D.Pa 2013).

At this point, denial of default judgment will prejudice Plaintiff by precluding "any effective avenue for obtaining relief[.]" *Roy v. Sakhr Software Co. (K.S.C.C.)*, C.A. No. 11-863-LPS, 2015 WL 4608132, at *2 (D. Del. July 31, 2015).

The second *Chamberlain* factor also weighs in favor of default judgment because Defendants failed to respond to Plaintiff's motion for default judgment and did not appear to present a litigable defense. This court has found that this factor is satisfied when defendants are nonresponsive. *See J & J Sports Prod. Inc.*, 2018 WL 6040254 at *2. Moreover, courts within the Third Circuit presume that "absent defendant[s] who [] [fail] to answer [to the entry of default have] no meritous defense . . . because it is not the courts responsibility to research the law and construct the parties' arguments for them." *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 271 (E.D. Pa. 2014) (citing *Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.,* 515 F.3d 718, 721 (7th Cir.2008)). Here, Defendants had ample time to complete the settlement or retain new counsel so the case could be rescheduled for a jury trial.

Defendants were notified by the Clerk of the Court of the entry of default in appearances against them. (D.I. 140) Plaintiff served its Motion for Default Judgment on the Defendants. (D.I. 141-2) The court sent notice to Defendants of the damages inquisition hearing. (D.I. 148) Nonetheless, Defendants failed to appear or participate in these proceedings. Furthermore, Laminados and VetroTool have not retained new counsel despite notice that a corporate Defendant cannot represent itself *pro se* in federal court. (D.I. 123); *See Rowland v. Cal. Mens Colony, Unit II Mens Advisory Council*, 506 U.S. 194, 203 (1993) (emphasizing that only "natural persons" may represent themselves *pro se*.)

The third and final *Chamberlain* factor weighs in favor of default judgment because Defendants' delay is due to "culpable conduct." Culpable conduct is "action taken willfully or in bad faith. *Sec. & Exch. Comm'n v. Krimm*, No. 1:17-CV-464, 2019 WL 2270437, at *5 (D. Del. May 28, 2019) (citing Gross *v. Stereo Component Sys., Inc.*, 700 F.2d 120, 123-24 (3d Cir. 1983)). Such conduct need not be active, as inaction, lack of action or failure to respond may

amount to culpable conduct. *Id.* Here, Defendants have been on notice of this action for years and have been served with pleadings, the pending motion, and been given ample opportunity to appear and defend. Following the court's denial of Plaintiff's motion to enforce the settlement agreement, Defendants failed to respond to the court's request for a status update and ceased participating in the litigation of the instant action. (D.I. 130)

Nearly two months after the damages inquisition hearing and supplementation of the record, Diaz sent the court a USB flash drive unaccompanied by any cover letter or an explanation of what it contained or why it was sent. (D.I. 158)  On March 17, 2026, Diaz sent the court a letter in Spanish unaccompanied by a certified English translation, however, an unofficial English translation utilizing Google Translate was docketed at (D.I. 161).  (D.I. 159)  Diaz made a third filing on July 2, 2026, asking the court to consider the previous two filings.  (D.I. 163)  The court will not consider Diaz's untimely efforts to oppose the entry of default judgment. The docket confirms he had ample opportunity to actively participate in these proceedings before and after the withdraw of two sets of counsel, and after he was given reasonable notice of default in appearance and of proceedings relating to the Motion for Default Judgment.  The court sees no reason to re-open the record and no such application has been made.

For these reasons, the court does not consider Diaz' untimely filings.

### B. Damages

Having established the entry of default judgment is appropriate, the court next considers the remedy. Plaintiff claims it is entitled to direct and consequential damages, attorneys' fees and to pre and post-judgment interest.  Plaintiff seeks an award of $3,909,238.61 in direct and consequential damages, including lost profits arising from the loss of a "Safelite award." (D.I. 155 at 3)

Having considered the applicable law, Plaintiff's submissions, and the evidence presented at the damages inquisition hearing, the court concludes that an award of damages in the amount requested is appropriate.

Plaintiff requests damages in the following amounts:

| | |
|---|---|
| Miscellaneous Invoice Total (Exs. 9 – 13; 20-21) | $1,531,475.83 |
| Star Manufacturing | $880,921.52 |
| NNR | $571,438.12 |
| ATI Diverted Employee Hours | $312,903.30 |
| AAG Diverted Employee Hours | $227,911.69 |
| Scrapped Glass | $505, 400.55 |
| Unrealized Net Income on Safelite Awards | $2,389,419.07 |
| | |
| Subtotal | $6,419,470.08 |
| | |
| Less amount remaining on the Agreement | ($2,510,231.47) |
| | |
| Damages | $3,909,238.61 |
| Attorneys' Fees | $571,311.34 |
| Judgment Amount | $4,480,594.95 |

(D.I. 142 at Ex. 6-19; D.I. 155 at 3, Ex. 20-21; D.I. 156 at 2)

As a preliminary matter, the Agreement provided for payment to Laminados in Euros. In its supplemental submission, Plaintiff contends that the conversion to U.S. dollars follows the "breach day rule" and should "be calculated [from Euros to U.S. dollars] on the same date that its damages stopped accruing with the final winddown of its facility [on] July 31, 2022." (D.I. 154 at 2) *See Hicks v. Guinness*, 269 U.S. 71, 46 S. Ct. 46, 70 L.Ed. 168, 80 (1925)) (holding "[t]he loss for which the plaintiff is entitled to be indemnified ... happens at the moment when the contract is broken ... and the plaintiff's claim is for the amount of that loss valued in money at that time.")

Plaintiff has submitted damage calculations and declarations from Frank Lauch, Plaintiff's Chief Financial Officer, and Aaron Bernay and Scott Cousins, counsel for Plaintiff.[7] According to the evidence submitted, in Plaintiff's declaration, the remaining payments due to Laminados, had Laminados not breached the Agreement, amount to $2,510,231.47, following conversion from Euros to U.S. dollars as of July 31, 2022. (D.I. 154 at 3)  Therefore, Plaintiff has applied this amount as an offset, reducing its total damages claim.

Plaintiff claims it incurred damages caused by Defendants' breach as follows:

a. The "Miscellaneous Invoice Total" represents costs which Plaintiff incurred "fabricat[ing], installat[ing], commission[ing], test[ing], and program[ing] the equipment, which were all responsibilities of Laminados under the Agreement. (D.I. 142 at 6) These invoices represent: (1) "Herschede Electric" invoices reflecting costs incurred for equipment unloading and setup; (2) "Art's Equipment Rental" and "Sunbelt Rentals"

---

[7] Plaintiff provides that on July 31, 2022, €1 equaled $1.023. Therefore, the remaining sum on the Agreement amounts to €2,454,514, or $2,510,231.47 as of July 31, 2022. (D.I. 154 at 3; D.I. 142-2 at 390, 399) (citing Wise Historical Currency Conversion Rates, https://wise.com/us/currency-converter/eur-to-usd-rate/history/31-07-2022).

invoices reflecting equipment rental expenses Plaintiff incurred because Laminados failed to install the required equipment under the Agreement; (3) "Hardware" expenses for materials Plaintiff was required to purchase despite Laminados' obligation to supply them under the Agreement; (4) "Project Associates" invoices reflecting costs incurred to program software into the machinery; and (5) "AGC Invoices," which reflect labor costs and expenses incurred by Plaintiff in attempting to make the equipment operational. (D.I. 142 at ¶ 27)

b.   "Star Manufacturing" represents amounts Plaintiff paid to Star Manufacturing to "program the preprocessing line and furnace because Laminados was unable to provide even the most basic processing programming for each piece of equipment." (*Id.*)

c.   "NNR Invoices" represents expedited shipping costs that Plaintiff assumed given the "numerous delays in delivering unfinished portions of the Equipment to [Plaintiff]." (*Id.*)

d.   "ATI Diverted Employee Hours" represents diverted labor hours from employees of Plaintiff's parent company ATI, to perform work on the Equipment that would have "been wholly unnecessary had Laminados delivered…[as] promised." (*Id.* at ¶ 31)

e.   "AAG Diverted Employee Hours" represents diverted labor hours from Plaintiff's own employees' to perform work on the equipment. (*Id.* at ¶ 28)

f.   "Scrapped Glass" represents damages resulting from broken and unusable glass that resulted from the defective equipment supplied by Laminados which "threw off an unusual amount of scrapped glass due to design and engineering issues that Plaintiff was constantly troubleshooting." (*Id.* at ¶ 32)

g.   "Unrealized Net Income on Safelite Awards" represents lost profits on Safelite orders Plaintiff could not fulfill but would have received "[h]ad the Equipment been ready and

13

capable of producing automotive glass per the Agreement, Plaintiff would have attained

the net income" of $2,389,419.07.[8]  (*Id.* at ¶ 30)

After reviewing the supporting documentation, the evidence presented at the damages

inquisition, and the supplemental declarations, the court finds that Plaintiff is entitled to damages

of $3,909,238.61.

## B. Attorneys' Fees

Plaintiff seeks $571,311.34 in attorneys' fees for prosecuting this action paid to Plaintiff's

Delaware and Ohio counsel, from October 2020, to January 2026.  (D.I. 156; D.I. 143 at Ex.

A)  "In legal actions in Delaware, attorney's fees will not be awarded 'unless clearly provided for

by statute or contract.'" *Pedrick v. Roten*, 70 F. Supp. 3d 638, 653-54 (D. Del.

2014) (quoting *Honaker v. Farmers Mut. Ins. Co.*, 313 A.2d 900, 904 (Del. Super. Ct. 1973)).

The Agreement provides as follows for attorneys' fees in the event of the Seller's breach:

> Seller will indemnify, defend and hold harmless Buyer, each of
> Buyer's affiliates, employees, and agents ("Buyer Indemnitees")
> against all losses, damages, claims, liabilities, fines, penalties,
> duties and expenses (including reasonable legal fees) arising or
> resulting from Seller's actual or alleged breach, negligent acts or
> omissions, or willful misconduct (each a "Breach") arising from or
> relating to this Agreement.

(D.I. 1-1 at §17.2; D.I. 142, Ex 1 at §17.2)

Under the Guaranty, the guarantors (VetroTool, Diaz, and Garcia) "hereby guarantee

AAG the full, complete, and absolute performance of all obligations, liabilities, and

---

[8] In accordance with the January 8, 2026, hearing, Plaintiff supplemented the damage calculations as to lost business with Safelite factoring in profits that would have naturally been lost in any event due to the COVID-19 pandemic. (D.I. 155 at 3) The expected sales were reduced by 10% in 2020, 8% in 2021, and unaffected in 2022. (*Id.* at 2)  This reduction was included in Plaintiff's total damages.

14

indebtedness, when due, of Seller to AAG of every kind and description." (D.I. 1-2 at 1; D.I. 142, Ex 3 at 1)

Plaintiff provides the court with two declarations and supplemental exhibits of detailed time keeping sheets with attorneys' fees ranging from $430 / hour (D.I. 143 ¶ 5) to $795 / hour. (D.I. 156; D.I. 144 ¶ 5) The case has been litigated for over four years. *See Washington v. Phila. Cty. Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996) (holding, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). Accordingly, the court finds that the amount requested for attorneys' fees and costs of $571,311.34 is appropriate.

## C. Prejudgment Interest

Plaintiff requests both prejudgment and post-judgment interest on the damages resulting from Defendants' breach of the Agreement. The court denies Plaintiff's request for prejudgment interest. On January 8, 2026, the court ordered "that on or before January 29, 2026, Plaintiff shall submit a revised proposed form of Default Judgment which shows how Plaintiff calculates the amount requested for prejudgment interest along with all itemized damages for which it seeks entry of a Judgment by Default Pursuant to Fed. R. Civ. P. 55(b)." (D.I. 153) Plaintiff failed to provide the court with an actual calculation of the interest rate, its application to the damages requested, and the total amount of prejudgment interest sought. Without anything in the record supporting a calculation of prejudgment interest, the court cannot award prejudgment interest. *See Pazos v. Lyondell Chem. Co.,* No. 01-7, 2001 WL 1667300, at *4 n.4, (E.D. Pa. Dec. 20, 2001) (holding that a party has the burden to produce calculations for the court and it "is not the job of the court to conduct the plaintiff's calculations for him.")

**D. Post-Judgment Interest**

The court awards post-judgment interest accruing at the rate of 3.98% as prescribed by 28 U.S.C. § 1961(a).

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for a default judgment in the total amount of $4,480,594.95 is GRANTED.  (D.I. 141)  An Order consistent with this Memorandum Opinion shall issue.

16